United States District Court
Southern District of Texas
**ENTERED**
March 18, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IMPACT FLUID SOLUTIONS LP, a/k/a IMPACT FLUID SOLUTIONS LLC, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-00652 |
| | § | |
| BARIVEN SA and PDVSA Services BV, | § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Plaintiff Impact Fluid Solutions LP's Motion for Attorneys' Fees (Doc. No. 93). Defendants Bariven SA and PDVSA Services BV did not file a substantive response.[1] After careful consideration, the Court grants Plaintiff's Motion.

**I.  Background**

Plaintiff Impact Fluid Solutions LP ("Impact" or "Plaintiff") is a Texas limited partnership that develops advanced fluid additives for oilfield operations in Houston. Defendant PDVSA Services BV is a Netherlands company and subsidiary of Defendant Bariven SA (collectively, "Defendants"), a Venezuelan corporation and subsidiary of Venezuela's state-owned oil company.

Impact sued Defendants for failure to make payment on two contracts for drilling fluids. After awarding summary judgment in favor of Impact (Doc. No. 84), this Court entered final

---

[1] Instead of a response, Defendants filed a notice stating, "For the reasons set forth by Defendants during the parties' pretrial hearing on November 1, 2021, Defendants contest Plaintiff's entitlement to any damages and to the recovery of attorneys' fees, but are not filing a substantive response to Plaintiff's Motion." (Doc. No. 94). At the pretrial hearing, counsel for the Defendants explained that due to the ongoing political turmoil in the Venezuela, the Defendants' attorneys "do not have access to the documents and witnesses that we would need to contest [Plaintiff's] claims." The Court notes that Defendants do have the ability and the wherewithal to contest the motion for attorneys' fees, as the entitlement to fees is a legal issue and the factual support, if any, is based upon documents that were provided to them by Plaintiff's counsel.

judgment (Doc. No. 90). Impact subsequently moved for attorneys' fees pursuant to Texas Civil Practice and Remedies Code § 38.001. (Doc. No. 93).

## II. Analysis

### A. Applicability of Texas Fee-Shifting Statute

In its Motion, Impact contends that "[s]tate law governs attorney's fee awards in a diversity case. *Id.* (quoting *HCC Ins. Holdings, Inc. v. Remeika*, No. CV H-15-2564, 2016 WL 4272345, at *5 (S.D. Tex. Aug. 15, 2016)). While this is essentially a true statement, the basis for jurisdiction in this case is not diversity. Instead, this Court's subject matter jurisdiction is based on the Foreign Sovereign Immunities Act (FSIA), which is "the exclusive basis for federal court jurisdiction in suits against corporations owned by foreign states." *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 421 (5th Cir. 1982). Despite this distinction, the Court finds that state law does indeed govern an award of attorneys' fees in this case. As the Fifth Circuit has explained, "[s]tate law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 415 (5th Cir. 2005) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). Texas law provided the rule of decision in this case (Doc. No. 84, at 9) and therefore controls the issue of attorneys' fees.

Texas law provides for the recovery of attorneys' fees against an "individual or organization" in a suit for "a sworn account" or for "an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(b)(7)–(8). "Organization" is defined by reference to the Texas Business Organizations Code. *Id.* § 38.001(a). The Code provides:

> "Organization" means a corporation, limited or general partnership, limited liability company, business trust, real estate investment trust, joint venture, joint stock company, cooperative, association, bank, insurance company, credit union, savings and loan association, or other organization, regardless of whether the organization is for-profit, nonprofit, domestic, or foreign.

TEX. BUS. ORGS. CODE § 1.002(62).

Using that § 38.001 definition, the Court finds that the Defendants are organizations and thereby liable for attorneys' fees to Impact, the prevailing party. Although both Defendants are either directly or indirectly state-owned entities of the Venezuelan government, they are also corporations acting in a private capacity engaged in competition with other private companies.[2] As a result, they come within the ambit of the fee-shifting statute, which makes "corporations" liable for attorneys' fees in certain types of suits, including here. TEX. CIV. PRAC. & REM. CODE § 38.001(b)(7)–(8); TEX. BUS. ORGS. CODE § 1.002(62).

Nothing in the Foreign Sovereign Immunities Act contradicts this holding. *Walker Int'l Holdings*, 415 F.3d at 416 ("FSIA does not supply law conflicting with Texas law on the issue of attorney's fees."). Although the Fifth Circuit has recognized that § 38.001 does not permit a party to recover attorneys' fees from a foreign governmental entity, *Box v. Dallas Mexican Consulate Gen.*, 623 F. App'x 649, 657 (5th Cir. 2015), the Defendants here are in fact corporate entities functioning in furtherance of their market activities in the oil sector. That is to say, while a governmental entity (Bolivarian Republic of Venezuela) may be their owner, PDVSA Services BV and Bariven S.A. here are liable in their private, corporate capacities, and have not been sued as sovereign entities.[3] The Court therefore considers them corporations for purposes of fee-shifting

---

[2] PDVSA Services BV, per its notice of removal, is a "corporation." (Doc. No. 1, at 1). Bariven SA, as its business suffix reflects, is a société anonyme, the equivalent of a corporation. *See Pittway Corp. v. United States*, 88 F.3d 501, 502 (7th Cir. 1996) (explaining that the "S.A." or "société anonyme" is a "business form roughly equivalent to a U.S. corporation").

[3] In so holding, the Court notes this reasoning resembles Texas courts' historical distinction between municipal governmental entities acting in their "proprietary" capacity (whereby they were subject to an award of attorneys' fees) versus their "governmental" role (whereby they were not liable for attorneys' fees) for purposes of § 38.001. *Gates v. City of Dallas*, 704 S.W.2d 737, 738–39 (Tex. 1986) (construing predecessor version of § 38.001). The distinction made by this line of cases is now moot due to subsequent legislation. In 1989, the Texas Legislature effectively amended § 38.001 by enacting what is now § 5.904 of the Local Government Code, which states: "A municipality may not be considered a corporation under a state statute governing corporations unless the statute extends its application to a municipality by express use of the term 'municipal corporation,' 'municipality,' 'city,' 'town,' or 'village.'" TEX. LOC. GOV'T CODE § 5.904(a); *see id.* § 5.904(b) ("It is the intent of the legislature that the limitation provided by this section apply regardless of whether the municipality is acting in a governmental or proprietary function.").

under § 38.001. There is no reason in fact or policy to treat these corporations operating in the private sector differently from others.

### B. Amount of Fees

As noted above, Plaintiff's original application acknowledged that Texas law governed the award of attorneys' fees in this case and based most of its arguments on *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997). Traditionally, federal courts utilize the so-called *Johnson* factors or approach. Under that approach, if it is determined that the prevailing party is entitled to attorneys' fees, the court must then apply a two-step method for determining a reasonable attorneys' fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016) (citation omitted). First, the court must calculate the "lodestar"—the number of hours reasonably spent multiplied by the appropriate hourly rate that is reasonable in the community for similar work. *Id.* at 392 (internal citation and quotation omitted); *see also Miraglia v. Bd. of Supervisors of the La. State Museum*, 901 F.3d 565, 577 (5th Cir. 2018). Second, the court must determine whether to enhance or reduce the lodestar based on the circumstances of the particular case according to the twelve factors set out in *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). *Miraglia*, 901 F.3d at 577 (citing *Combs* 829 F.3d at 393–94).

"The fee applicant bears the burden of proving that the number of hours and the hourly rate for which compensation is requested is reasonable." *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). "A district court must 'explain with a reasonable degree of specificity the findings and reasons upon which the award is based.'" *Id.* (quoting *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)).

The lodestar amount is presumed reasonable. *Combs*, 829 F.3d at 392 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010)). Nevertheless, the court may enhance or

4

decrease the lodestar amount based on the twelve factors set out in *Johnson*. These factors are used to determine if the lodestar rate should be increased, decreased, or fixed as is, and they include:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19. To the extent these factors are duplicative of the lodestar factors, they are not counted twice. *See, e.g., Perdue*, 559 U.S. at 554; *Ramirez v. Lewis Energy Group, L.P.*, 197 F. Supp. 3d 952, 956 (S.D. Tex. 2016).

Enhancements to the lodestar amount must be rare because "instead of merely guaranteeing adequate representation, they can result in a windfall to attorneys." *Combs*, 829 F.3d at 393 (citing *Perdue*, 559 U.S. at 559 & n.8). The circumstances in which an enhancement is necessary are "indeed rare and exceptional, and require specific evidence that the lodestar fee would not have been adequate to attract competent counsel." *Perdue*, 559 U.S. at 554 (internal citation and quotation omitted). In other words, "excellent results should usually result only in 'a fully compensatory fee'—the lodestar." *Combs*, 829 F.3d at 393 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

Despite the longstanding use of the *Johnson* factors in federal court, it could easily be argued that, because Texas state law controls, Texas's attorneys' fees approach should govern the actual analysis as well. An award of attorney fees under the Texas Civil Practice and Remedies Code "must be both 'reasonable' and 'incurred.'" *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010). Texas courts consider the following eight factors when awarding attorney fees:

5

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen*, 945 S.W.2d at 818 (citation omitted).

The Court holds that the approach based upon Texas law does control the award, but in so ruling points out to both sides that the twelve factors set out in *Johnson* and the eight factors set out in *Arthur Andersen*, for all practical purposes, completely overlap. Thus, the result would be the same if federal law controls.

That being the case, this Court finds there to be no problem in applying controlling Texas law while at the same time staying within the attorneys' fees framework normally used in federal court.

### III. Lodestar

The Court finds the various hourly rates sought by Impact for their attorneys to be reasonable. These rates are commensurate with the rates charged by other reputable firms in this legal community—given the experience and ability of the lawyers involved. The Court does, however, make one adjustment. It finds that all non-lawyer time billed on this matter should be capped at $200 per hour.

Having found the Plaintiff to be the prevailing party, having found it is entitled to a recovery of attorneys' fees under Texas law, and having found, based upon the evidence that, with one exception, the hourly rates are appropriate, the Court must next address the reasonableness of the hours expended.

The Court finds that the hours expended on the tasks performed (with one exception) to be reasonable and necessary tasks related to the prosecution of this lawsuit. The Court finds the number of intra-firm conferences (that is conferences between Plaintiff's lawyers among themselves sans clients) to be excessive. While these conferences may be a necessary and perhaps inherent part of the modern-day legal practice, it does not seem reasonable that an opposing party should be made to pay for the other side's lawyers to talk to each other. The Court, therefore, reduces the fees attributable to those conference to the billing of one lawyer. The Court did not completely delete all billing in this regard, because it recognizes the need to impart pertinent information from one team member to another.

That being said, based upon the two exceptions it has noted, the Court reduces the requested fees and expenses from $275,174.63 to $261,353.58—this reduced amount representing the net amount after the reduction in non-lawyer billing rates and the time billed for attorney–attorney conferences.

IV. **The *Arthur Andersen/Johnson* Factors**

The Court proceeds to review the factors required to determine whether the lodestar fee is reasonable or if an adjustment should be made. As mentioned above, in federal cases, courts use the twelve *Johnson* factors, while in cases governed by Texas law courts look to the factors set out in *Arthur Andersen*. The chart below sets out each:

| *Johnson* Factors | *Arthur Andersen* Factors |
|---|---|
| (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. | (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. |

The Court will discuss these together since they virtually overlap, but it will use the state law *Arthur Andersen* label with the number(s) of the comparable *Johnson* factor(s) in parentheticals.

**1. Time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly (*Johnson* Factors 1-3).**

The Court has already discussed the time and labor factor. This case, while perhaps containing certain language barriers (since English and Spanish were at some point perhaps involved), in reality presented straightforward legal questions involving Texas law. Was there a contract? Did the Defendants comply? If not, was Plaintiff damaged? If so, how much was it damaged? While these issues required competent counsel (and both sides have competent counsel), it did not require any special skill or unique expertise. This factor certainly does not warrant an increase over or decrease below the "lodestar" rate.

8

### 2. The likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer (*Johnson* Factors 4, 10).

Certainly, to some extent, any case that requires time takes away from some other activity that a lawyer could be doing. The Court, however, finds nothing out of the ordinary in this case. It was not lengthy, and while it contained a most unique argument over which lawyers represented the Defendants, as far as the Plaintiff is concerned, it was not controversial. It did not contain any other feature that would cause a loss of employment elsewhere. Consequently, without some specific evidence, the Court finds this factor to not weigh one way or the other.

### 3. Customary fee charged in the locality for similar legal services (*Johnson* Factor 5).

This Court has already recognized that the hourly rates sought by Plaintiff are reasonable. Defendant has not seriously questioned that rate, and the Court finds it safely within the customary fees in the Houston area.

### 4. The amount involved and the results obtained (*Johnson* Factors 8, 12).

The amount awarded in this case exceeded five million dollars. Thus, a good, solid result was achieved. The result here was the amount owed under the contracts, so it is a result that would be in line with similar contract cases. This Court sees no reason to find that this factor favors either side.

### 5. The time limitation imposed by the client (*Johnson* Factor 7).

Plaintiff provides no evidence or argument that suggests this factor has a bearing on the fees awarded, so the Court need not analyze it.

9

**6. The nature and length of the professional relationship with the client (*Johnson* Factor 11).**

Again, the Plaintiff makes no argument and provides no evidence that suggests this factor should play a role in determining the final fee request. This factor does not seem to play a role and certainly does not suggest a lodestar adjustment.

**7. The experience, reputation, and ability of the lawyer or lawyers performing the services (*Johnson* Factor 9).**

Defendant has not questioned the ability or experience of Plaintiff's counsel. This Court, likewise, has no reason to question their competence either. With regard to counsel's "reputation," this is a basic business dispute that was presented to the Court. The reputation of counsel was never a factor and did not impact the outcome.

**8. Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services are rendered (*Johnson* Factors 5–6).**

The fee agreement in question appears to be a straightforward agreement with the client paying the attorneys an hourly rate for their services. Thus, this factor does not suggest an adjustment should be made.

Based on the foregoing analysis, the Court finds the lodestar rates as adjusted to be reasonable and the hours spent as adjusted to be reasonable and necessary. Additionally, the Court finds no reason to adjust the movant's fees upwards or downwards from its initial calculation.

**V.      Future Legal Fees**

Plaintiff has sought a $5,000 award for fees incurred during the period of preparation of this motion as well as $125,000 should the case be appealed to the Fifth Circuit Court of Appeals, an additional $35,000 if Plaintiff prevails before the panel and a motion for rehearing is filed, an additional $125,000 if the case is accepted and heard *en banc*, and an additional $75,000 should the Defendants file a Petition for Writ of Certiorari and the Court request a response. While these

10

amounts are obviously estimates, they are supported by the evidence and the Court finds them to be appropriate.

VI. **Conclusion**

For the foregoing reasons, the Court hereby grants Plaintiff's Motion for Attorneys' Fees (Doc. No. 93) and **ORDERS** the following:

1. IFS is awarded $261,353.58 in attorneys' fees and expenses incurred in the prosecution of this case against Defendants;

2. IFS is awarded an additional $5,000 for estimated attorneys' fees incurred for January 2022;

3. IFS is awarded an additional $125,000 in attorneys' fees should Defendants appeal this matter to the United States Court of Appeals for the Fifth Circuit;

4. IFS is awarded an additional $35,000 should a party file a motion for rehearing;

5. IFS is awarded an additional $125,000 should the matter be set for rehearing *en banc*; and

6. IFS is awarded an additional $75,000 should a Petition for Writ of Certiorari be filed in the United States Supreme Court, if the United States Supreme Court requests a response.

Signed at Houston, Texas, this 18 day of March, 2022.

Andrew S. Hanen
United States District Judge